IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LATISHA ROBINSON, Individually
and as Parent and Natural Guardian of
A.T., a minor

    *Plaintiff*,

    v.

BOARD OF EDUCATION OF
WASHINGTON COUNTY, *et al.*,

    *Defendants*.

Civil No. 1:22-cv-01102-ELH

## MEMORANDUM OPINION

This case is rooted in the unimaginable.  It involves disturbing acts of sexual abuse of a six-year old female student, committed by two of her female first-grade classmates, while at school.  Plaintiffs Latisha Robinson, individually and as parent and natural guardian of A.T., a minor, seek to impose liability on the Washington County Board of Education (the "BOE" or the "Board") and several educators for what occurred and for the response to the occurrence.[1]

In particular, in addition to naming the BOE as a defendant, plaintiffs filed suit against Dr. Boyd Michael III, who was the district superintendent at the time[2]; Dana Peake, the principal of Ruth Ann Monroe Primary School (the "School") in Hagerstown, Maryland, where the abuse occurred in 2019; and Lauren Housel, the students' teacher. ECF 1 ("Complaint").  The parties agree that at all relevant times the individual defendants were agents of the BOE and were acting within the scope of their employment. ECF 1, ¶¶ 15-20; ECF 5, ¶¶ 15-16, 19.

---

[1] The Complaint generally refers to "plaintiff," in the singular, referencing Ms. Robinson. But, the submissions also refer to "plaintiffs," *i.e.*, Ms. Robinson and A.T. Therefore, I shall generally refer to "plaintiffs."  A reference to "plaintiff," in the singular, pertains to Ms. Robinson.

[2] Dr. Michael retired in July 2022, after 43 years of service.  ECF 4 at 1 n.1.

The suit contains five counts. In particular, plaintiffs assert a claim against the Board for violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 et seq. (hereafter, "Title IX") (Count I); a claim pursuant to 42 U.S.C. § 1983 for failure to train, lodged against the Board, Michael, and Peake (Count II); "State-Created Danger" under 42 U.S.C. § 1983, asserted against the Board, Michael and Peake (Count III); negligence as to all defendants (Count IV); and a claim against the Board, Michael, and Peake for negligent supervision, monitoring, and training (Count V).  Plaintiff seeks both compensatory and punitive damages, as well as attorney's fees and costs.  ECF 1.

Defendants have moved to dismiss Counts I, II, III, and V pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 4 (the "Motion").  They also seek to dismiss Count IV to the extent that it asserts a claim for educational malpractice.  *Id.*  Defendants have also answered the suit.  ECF 5.  And, in their Motion, defendants rely on factual assertions in their Answer.  *See*, *e.g.*, ECF 4 at 2.  Plaintiffs oppose the Motion. ECF 11 (the "Opposition").  In their Opposition, plaintiffs also seek leave to amend Counts II and III to add claims against Michael and Peake in their individual capacities. Defendants have replied.  ECF 15 (the "Reply").

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion in part and deny it in part.

## I.      Background[3]

In the fall of 2019, A.T. was six years of age and a student in the first grade at the School. ECF 1, ¶ 37.[4]  Housel was her teacher. *Id.* A.T. "generally enjoyed attending school and learning." *Id.*

Housel sent a text message to plaintiff on November 6, 2019, expressing concern about A.T.'s classroom conduct.  *Id.* ¶¶ 37, 38.  Housel noted that "A.T. often spent time playing in the back of the classroom with Student A instead of learning in her seat during math class." *Id.* ¶ 39. Housel sent a second message to plaintiff on or about November 13, 2019.  ECF 5, ¶ 38.[5]

Ms. Robinson became concerned about A.T.'s classroom environment "after receiving two messages of this nature" from Housel.  ECF 1, ¶ 40.  Therefore, she contacted Housel on or about November 13, 2019, and asked to move A.T. into a different class to separate her from Student A. *Id.*  ¶ 40.[6]  Housel responded on November 18, 2019.  *Id.*  She informed plaintiff that she had spoken to the administration, and moving A.T. to another class "'would be a process.'" *Id.* Ms. Robinson claims that no further action was taken with respect to her request. *Id.*

---

[3] At this juncture, the Court assumes the truth of the allegations in the Complaint.  *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).

[4] According to defendants, the School is a PreK-2nd grade Title I school.  ECF 4 at 2 n.3. Title I, Part A of the Elementary and Secondary Education Act, as amended by the Every Student Succeeds Act, provides financial assistance to local educational agencies and schools with high percentages of children from low-income families to help ensure that all children meet state academic standards.  *Id.*

[5] The Complaint is unclear as to when the second message was transmitted.  But, plaintiff asserts that she received two messages from Housel.  ECF 1, ¶ 40.

[6] Defendants admit that plaintiff "raised the possibility of moving A.T. to another class, but state that the request was sent on November 15, 2019, rather than November 13, 2019. *Id.* ¶ 40.  The discrepancy is immaterial.

Also in the fall of 2019, A.T.'s father noticed that A.T. was engaging in sexualized behavior.  ECF 1, ¶ 41.  He claims that A.T. "started kissing his other children on the mouth and was talking about 'boyfriends and girlfriends.'"  Id.[7]

Then, on December 4, 2019, Ms. Robinson "received a phone call from [the School] requesting that she come in and meet with Housel and Peake immediately."  Id. ¶ 42.  At the meeting, at which A.T. was present, Peake informed plaintiff that A.T. had "'made a bad decision'" and "'took nude photos of herself'" in the School bathroom, using a school iPad.  Id.  Housel indicated that the images were discovered after another student reported them. Id.[8]  But, A.T. later told her mother "that student A had instructed her to take the photographs." Id. ¶ 43.

Ms. Robinson subsequently received a call from Stephen Pittman, a Child Protective Services employee for the Washington County Department of Social Services.  Id. ¶ 44.  Plaintiffs met with Pittman and a social services victim advocate, Victoria Morrison, on December 10, 2019. Id. ¶ 45. Pittman interviewed A.T. while "Morrison asked plaintiff questions about A.T., their home, and plaintiff's own childhood." Id.

Thereafter, Pittman "informed Plaintiff that A.T. had been sexually abused by other students in her class. . . ." Id. ¶ 46. He explained that School employees "discovered the abuse" because some of the incidents were "video-recorded" on "the school-issued classroom iPad." Id. Pittman added that Housel found A.T.'s photographs in the "deleted" folder on the classroom iPad. Id.  Thereafter, the School "examined" all 200 of the School iPads, and videos of A.T. and two

---

[7] It does not appear that plaintiff resides with A.T.'s father.

[8] Defendants claim that on December 4, 2019, in response to discovering the photographs, they contacted the school's resource officer, who was also a member of the Washington County Sheriff's Department, as well as the Department of Social Services. ECF 5, ⁋ 43. Further, defendants claim that those two departments proceeded to collect "all of the pertinent evidence and conducted the investigation into the students' activities." Id.

other female students were found in the "'Deleted' folder" of "at least one of the devices." ECF 1, ¶ 46.

Moreover, Pittman stated that at least five videos were recorded on different dates during the fall semester of 2019, including November 15, 2019. *Id.* ¶¶ 48, 50. Each video involved A.T., student A, and at least one other child. *Id.* ¶ 48. The videos showed the children engaged in "licking" of each other's genitals and "kissing." *Id.* ¶ 47. According to Pittman, all the videos "took place in Housel's classroom, behind a bookshelf, in the back of the classroom." *Id.* ¶ 48.

Upon learning of the sexual abuse of A.T., plaintiff attempted to contact Peake to obtain more information and to determine how the school planned "to protect A.T." *Id.* ¶ 54. She alleges that Peake never responded. *Id.* Robinson also claims that defendants did not "reach out" to her or A.T. in an effort to investigate the incidents. *Id.* ¶ 55. Further, plaintiff asserts that defendants "made no efforts to move A.T. to another class, offer her any counseling services, provide her with additional academic assistance or accommodations, or offer A.T. any other means of support or additional security to prevent future incidents of sexual abuse at school." *Id.* ¶ 56. She also claims that, even after the abuse was discovered, "A.T. remained in Housel's class" with her abusers, without any attempt by defendants "to separate" A.T. from "the other female classmates who abused her." *Id.* ¶ 59.

Robinson claims that she inquired of the BOE as to the status of the investigation and to inform the Board that she could not send A.T. to School until measures were taken to assure A.T.'s safety. *Id.* ¶ 62. Plaintiff also attempted to register A.T. for another Washington County public elementary school, as she had concerns about A.T.'s safety. *Id.* ¶ 60. On December 18, 2019, plaintiff received a letter from the school to which she had applied for a transfer, denying admission because "'an investigation was still underway.'" *Id.* ¶ 60. The letter directed plaintiff to

contact Peake for more information, but "when plaintiff called Peake, she never received a response." ECF 1, ¶ 60.

In a letter of January 10, 2020, the Board claimed that it was unable to provide plaintiff with more information about the matter, but that it took "the matter very seriously." *Id.* ¶ 62. By February 2020, plaintiff still had not received any information as to safety measures for A.T. or the status of the investigation. *Id.* ¶ 63. Therefore, she asserts that she "had no choice but to move herself, A.T., and the remainder of their family to Frederick County so that A.T. could attend" a new public school. Plaintiff contends that she was denied the ability to attend public school in Washington County from December 19, 2019 through March 2020. *Id.*[9] And, she asserts that she has suffered financial loss in order "to move A.T. to another county to receive sufficient public education . . . ." *Id.* ¶ 69.

Plaintiff also complains that the School's personnel failed to "conduct routine reviews of the content" of the School's iPads. *Id.* ¶ 52. Nor did the Board develop and implement policies and procedures pertaining to the monitoring of student use of the devices. *Id.* ¶ 53.

According to plaintiff, A.T. "has suffered and will continue to suffer serious and severe physical and emotional damages of a permanent and lasting nature." *Id.* ¶ 68; *see also id.* ¶ 58. Prior to the abuse, for example, A.T. excelled in school. *Id.* ¶ 66. However, according to plaintiff, the abuse has had a "negative impact" on A.T.'s participation in school programs and her "academic performance." *Id.* ¶ 64. Further, she has developed body dysmorphia, such that "the sight of her own body embarrasses her and makes her feel a sense of shame." *Id.* ¶ 66.

---

[9] The Court notes that as of March 2020, the public schools in Maryland began to shut down due to the global COVID-19 pandemic. F.R.E. 201.

A.T.'s maladies include ongoing shame, sexualized behavior, depression, nightmares, irritability, physical pain, anxiety, and difficulty accepting authority and maintaining focus in school. ECF 1, ¶ 66. Plaintiff seeks damages for A.T.'s past and future therapeutic and medical treatment, and she also avers that the abuse will impact A.T.'s eventual earning capacity. *Id.* ¶¶ 66-69.[10]

## II.    Standard of Review

A defendant may test the legal sufficiency of a plaintiff's complaint by way of a motion to dismiss under Rule 12(b)(6*). Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the

---

[10] Plaintiff alleges that she provided notice of her claims pursuant to the Local Government Tort Claims Act, Md. Code (2020 Repl. Vol.), § 5-302 *et seq.* of the Courts and Judicial Proceedings Article as well as the Maryland Tort Claims Act, Md. Code (2021 Repl. Vol.), § 12-101 *et seq.* of the State Government Article.  *See* ECF 1, ¶ 9.

defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570*; see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317-18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n

unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys.*, LLC, 959 F.3d 605,

616 (4th Cir. 2020).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.' " *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.' " *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if

they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

### III.   Discussion

### A.  Title IX (Count I)

In Count I, lodged solely against the Board, plaintiffs allege that the "student-on-student sexual assault and harassment" that A.T. experienced constitutes sex discrimination prohibited by Title IX.  ECF 1, ¶ 73.  Further, plaintiffs criticize the Board's response to the sexual abuse, of which it had actual notice by at least December 4, 2019.  *Id.* ¶ 76; *see* ECF 4 at 3.  They assert that, despite notice of the sexual abuse of A.T., the Board "acted with deliberate indifference toward A.T. and her rights to a safe and secure education environment and left A.T. vulnerable to further sexual abuse and harassment by her classmates," in violation of Title IX.  ECF 1, ¶ 79.

Defendants argue, ECF 4 at 4: "[T]here is no suggestion in the Complaint that anyone at [the School] or the BOE ever had actual notice" of the sexual activities prior to December 4, 2019.  Indeed, nobody at [the School] or the BOE could have even imagined that first grade female students would engage in this type of behavior."  And, they maintain that plaintiffs fail "to allege any conduct that would remotely demonstrate deliberate indifference . . . after December 4, 2019."  ECF 4 at 5.

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A "program or activity" refers, in part, to "all of the operations" of the following:

> (A)   a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

> (B)     the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

20 U.S.C. § 1687(1)(A)-(B); *see Fordyce v. Prince George's County, Md*., 43 F. Supp. 3d 537, 546 (D. Md. 2014) (explaining that "although the statute by its plain language applies to recipients of federal funding, the recipient must also be an 'education program or activity'") (quoting 20 U.S.C. § 1681(a)).

For the purpose of Title IX, sexual harassment and sexual assault constitute sex discrimination. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281-82 (1998); *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 75 (1992). In other words, "student-on-student sexual harassment, if sufficiently severe, can … rise to the level of discrimination actionable under" Title IX. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).  Moreover, "[a]n implied private right of action exists for enforcement of Title IX." *Preston v. Virginia ex rel. New River Community College*, 31 F.3d 203, 205-05 (4th Cir. 1994) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)).

To state a Title IX claim based on student-on-student sexual harassment, plaintiffs must plausibly allege that "(1) [A.T. was] a student at an educational institution receiving federal funds; (2) [A.T.] suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived [A.T.] of equal access to the educational opportunities or benefits provided by [A.T.'s] school; (3) the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and (4) the school acted with deliberate indifference to the alleged harassment." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 263–64 (4th Cir. 2021); *see Davis*, 526 U.S. at 646-52; *Gebser*, 524 U.S. at 290-

92; *cf. Jennings v. Univ. of No. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc) (involving harassment by a coach).

Plaintiffs allege that the Board and the School "were at all relevant times recipients of federal funds within the meaning of 20 U.S.C. § 1681(a)." ECF 1, ¶ 13.[11]  Of note, 42 U.S.C. § 2000d–7(a)(1) provides: "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of ... title IX of the Education Amendments of 1972." In *Litman v. George Mason Univ.*, 186 F.3d 544 (4th Cir.1999), *cert. denied*, 528 U.S. 1181 (2000), the Fourth Circuit concluded that, in enacting § 2000d–7, Congress "permissibly conditioned [a school's] receipt of Title IX funds on an unambiguous waiver of [the school's] Eleventh Amendment immunity, and that, in accepting such funding, [the school] has consented to litigate [private suits] in federal court." *Id.* at 555.

Further, the claim that A.T. was sexually abused multiple times while class was in session, combined with the factual statements as to how that abuse deprived A.T. of educational opportunities, satisfies the second prong of a Title IX claim. *Id.* ¶¶ 48, 73.

With respect to the actual notice or knowledge component of the claim, defendants argue that "there is no suggestion in the Complaint" that anyone at the School or the Board had "actual notice of any of the alleged student-on-student sexual activities occurring with A.T. and the two other students prior to December 4, 2019." ECF 4 at 5.  Thus, defendants state: "As Plaintiffs fail to assert the necessary facts to demonstrate that the BOE was aware of any alleged sexual abuse of A.T. prior to December 4, 2019, the BOE is entitled to dismissal of Count I as a matter of law."

---

[11] In the Answer, defendants deny plaintiff's claim that the Board and the School received federal funds, as alleged.  ECF 5, ¶ 13.  Yet, they concede that the School is a Title I school that receives financial assistance.  ECF 4 at 2 n.2.

ECF 4 at 5.  However, defendants concede that they had notice of the incidents as of December 4, 2019.

As to the fourth prong of a Title IX claim, defendants contend that the suit is devoid of allegations sufficient to establish deliberate indifference after they obtained notice. It is this topic that is the primary focus of the discussion that follows.

### 1. Notice

"[A] school has actual notice or knowledge when it is informed or notified of the alleged harassment." *Fairfax*, 1 F.4th at 266 (citing *Gebser*, 524 U.S. at 290). This may include being "'alerted' to the 'possibility' of sexual harassment occurring," *id*. (citing *Gebser*, 524 U.S. at 291); "complaints, allegations, or reports" of harassment, *id*. at 267 (citing *Davis*, 526 U.S. at 649, 653-54); or by witnessing it or receiving a report of it, *id.* (citing *Doe v Galster*, 768 F.3d 611, 614 (7th Cir. 2014)).

Constructive notice is not sufficient. *Id*.  But, "a clearly credible report of sexual abuse from the plaintiff-student" is not required.  *Id*. Rather, "when a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment, that receipt establishes actual notice of such harassment for Title X purposes." *Fairfax*, 1 F.4th at 265 (citing *Jennings*, 482 F.3d 686).

Actual notice is an "objective inquiry which   asks whether an appropriate official in fact received a report or complaint and whether a reasonable official would construe it as alleging misconduct prohibited by Title IX." *Fairfax*, 1 F.4th at 268.   An appropriate official is described as "a school official with authority to address complaints of sexual harassment and to institute corrective measures." *Id*. at 265; *see also Gebser*, 524 U.S. at 290 ("An 'appropriate person' ... is,

at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination.").

Certainly, principals and assistant principals are considered appropriate officials. *See Fairfax*, 1 F.4th at 270-72. And, in the context of peer-on-peer sexual harassment, informing a classroom teacher may be considered adequate notice. *See Davis*, 526 U.S. at 634, 646-47 (observing the ability to control and influence behavior that exists in the classroom and commenting on notice to district employees); *see also Willey v. Bd. of Educ. of St. Mary's County*, 557 F. Supp. 3d 645 (D. Md. 2021) (holding that directly advising a teacher of concerns about sexual harassment satisfied the notice requirement).

It is undisputed that defendants knew of the sexual abuse of A.T. by December 4, 2019. ECF 1, ¶ 76; ECF 5, ¶¶ 42-48.

### 2.   Deliberate Indifference

According to plaintiffs, despite notice to the Board of the sexual assault of A.T., the Board acted with "deliberate indifference toward A.T." with respect to "her rights to a safe and secure education environment . . . ." ECF 1, ¶ 79. Robinson recounts that she was initially contacted by the School, but only to tell her that A.T. had taken photos of herself with the school-issued iPad. ECF 11 at 2. This was wholly inaccurate, however. Thus, Robinson seems to allege that the School sought to blame A.T. for making "'a bad decision'" to take nude photos of herself, when "the truth" was that A.T. had been victimized by other students. *Id.* (citing ECF 1, ¶ 42).

Further, plaintiffs complain that School administrators had authority to address the abuse and "to institute corrective measures but failed to do so." ECF 1, ¶ 77. Yet, she claims that the BOE left "A.T. vulnerable to continued abuse and harassment," ECF 11 at 8, because the Board

"made absolutely no effort to take any steps to assist A.T. in regaining equal access to educational benefits." *Id.* at 14.

Defendants contend that plaintiff has failed to allege adequately that the Board acted with deliberate indifference. ECF 4 at 6-8. It asserts, *inter alia*, that it promptly notified parents, began a review of every School iPad, and contacted the Washington County Sherriff's Department and the Washington County Department of Social Services to investigate the sexual abuse suffered by A.T. *Id.* Defendants seem to suggest that because nothing untoward happened to A.T. after the Board had notice, there is no basis for liability. ECF 15 at 2. In other words, they assert that the alleged deliberate indifference did not cause or subject A.T. to further discrimination. *Id.* at 3 (citing *Borkowski v. Baltimore Ctny, Md.*, 492 F. Supp. 3d 454, 491 (D. Md. 2020)).

In their Reply, defendants add "that A.T. did not suffer any deprivation at [School] because she was somehow forced to return to the school and to face her classmates that [sic] participated in the inappropriate activities. Instead, we know (based on Plaintiffs' own alleged facts), she did not return to school while the incident was being investigated by Child Protective Services and the police department." ECF 15 at 4.

Defendants seem to suggest that plaintiff voluntarily kept A.T. home from School, and thus she was not vulnerable. But, they do not address the claim of plaintiff that A.T. did not go to School because the Board took no steps to assure her safety.

Of relevance here, "a school's actual notice of the alleged sexual harassment is what triggers its duty to investigate." *Fairfax*, 1 F.4th 268; *see Davis*, 526 U.S. at 649-50. "'Under Title IX, a school acts with deliberate indifference where its response to the alleged harassment or the lack of any such response is clearly unreasonable in light of the known circumstances.'" *Fairfax*,

1 F.4th at 271 (quoting *Davis*, 526 U.S. at 648) (internal quotation marks omitted). But, this is a high standard, requiring more than a showing of negligence. *Fairfax*, 1 F.4th at 271.

Notably, a school may be held liable under Title IX if its response to even a single "incident of severe sexual harassment, or the lack thereof, was clearly unreasonable and thereby made the plaintiff more vulnerable to future harassment or further contributed to the deprivation of the plaintiff's access to educational opportunities." *Fairfax*, 1 F.4th at 274.[12]  And, "an educational institution may be held liable for discrimination under Title IX when its indifference makes its students 'liable or vulnerable to harassment,' even if no harassment occurs after the report of sexual harassment." *Danvers as next friends of Danvers v. Loudoun County School Board*, RDA-21-1028, 2022 WL 4585524 (E.D. Va Sep. 29, 2022) (internal citation omitted).  In addition, a school board may be found deliberately indifferent if it "exclude[s] [students] from participating in, . . . denies [students] the benefits of, or . . . subject[ts students] to discrimination under" its "program[s] or activit[ies]." *Davis*, 526 U.S. at 640-41.

To be sure, "educational institutions have a great deal of flexibility in disciplining students who sexually harass other students," and "an institution is not normally liable for failing to cede to a harassment victim's specific remedial demands." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018). But, a school board's decision "to remain idle in the face of known student-on-student harassment in its schools" can support a finding of deliberate indifference. *Davis*, 526 U.S. at 641.

---

[12] In *Fairfax*, the Fourth Circuit noted the circuit split with respect to whether an unreasonable response to even a single incident of sexual harassment can support a Title IX violation. 1 F.4th at 273 n. 12. The Fourth Circuit agreed with the First and Eleventh Circuits in holding that it can. *See Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172 (1st Cir. 2007), *rev'd and remanded on other grounds,* 555 U.S. 246 (2009)*; Williams v. Bd. of Regents of Univ. Sys. of Ga.,* 477 F.3d 1282, 1295–97 (11th Cir. 2007).

A school board may also act with deliberate indifference when it implements "little more than half-hearted measures." *Zeno v. Pine Plains Cent. Sch. Dist.,* 702 F.3d 655, 669-70 (2d Cir. 2012). As the Fourth Circuit has said, "[h]alf-hearted investigation or remedial action will [not] suffice to shield a school from liability." *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty*, 819 F.3d 69, 77 (4th Cir. 2016).

Plaintiffs assert that the Board ignored Robinson's complaints regarding Student A's influence on A.T., failed to inform Robinson of the sexual abuse of A.T., and did not reach out to plaintiffs as part of the investigation of the sexual abuse. ECF 1, ¶¶ 40, 55; ECF 11 at 11. Further, they claim that the Board took no action to implement a safe classroom environment for A.T. upon learning of the abuse, and refused to allow A.T. to switch classes or transfer to another school so that she would not have to interact with her abusers. ECF 1, ¶¶ 56, 59-63, 80. Therefore, plaintiffs contend that, after the Board had notice of what happened to A.T., the Board failed to provide a safe environment for A.T. *Id.* ¶ 61; ECF 11 at 12.

In support of the claim of deliberate indifference, plaintiffs argue that defendants' response to learning of A.T.'s sexual abuse contravenes the Office for Civil Rights; Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed. Reg. 12034 (Mar. 13, 1997) ("OCR Guidelines"). ECF 11 at 9. In relevant part, the OCR Guidelines state, 62 Fed.Reg. at 12042:[13]

> Once a school has notice of possible sexual harassment of students—
> whether carried out by employees, other students, or third parties—it should take
> immediate and appropriate steps to investigate or otherwise determine what
> occurred and take steps reasonably calculated to end any harassment, eliminate a
> hostile environment if one has been created, and prevent harassment from occurring

---

[13] Courts have looked to the OCR Guidelines when evaluating the appropriateness of a school's response to the possibility of sexual harassment of students. *See, e.g., Hal v. Millersville Univ.*, 22 F.4th 397, 406 (3d Cir. 2022); *Doe v. Loyola Univ. Md.*, ELH-20-1227, 2021 WL 1174707, at *20 (D. Md. Mar. 29, 2021).

again. These steps are the school's responsibility whether or not the student who was harassed makes a complaint or otherwise asks the school to take action.

Assuming the truth of the allegations in the Complaint, as I must at this stage, plaintiffs have stated a Title IX claim based on deliberate indifference. Therefore, I shall deny the Motion as to Count I.

### B.  42 U.S.C. § 1983 (Counts II and III)

#### 1.  Section 1983 Generally

Plaintiffs argue that the Board, as well as Dr. Michael and Peake in their official capacity, denied A.T. her constitutionally protected "educational rights and right to bodily integrity," in violation of the Fourteenth Amendment. *Id.* ¶ 109; *see id.* ¶ 94.  Specifically, in Count II plaintiffs allege that defendants are liable for a "failure to train" administrators, teachers, staff, and employees about policies and procedures concerning reporting, investigating, and responding to known or suspected abuse of students.  ECF 1, ¶ 92.  And, in Court III they argue that defendants are liable under the "state-created danger" doctrine for providing iPads to the students without sufficient monitoring or supervision of them. ECF 1, ¶ 105.  Plaintiffs lodge these claims pursuant to 42 U.S.C. § 1983. *Id.*  ¶¶ 3-6.

Section 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).  It provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 575 U.S. 983 (2015). However, §

1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). "The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips*, 572 F.3d at 180 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 (citations and internal quotation marks omitted) ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiative of a private party is insufficient.").

The doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is

premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Ultimately, to establish supervisory liability under § 1983, the plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

## 2. The Board

Defendants maintain that the claims against the Board must be dismissed as it is not a "person" for § 1983 purposes. ECF 4 at 9. Rather, they assert that the Board is a "State agency, rather than a county or municipal agency." *Id.* Plaintiffs do not respond to this contention in their Opposition.

In Maryland, public schools are organized by county, and each county's public school system is managed by a county board of education. *See* Md. Code (2018 Repl. Vol.), §§ 3-103, 4-101, 4-108 of the Education Article ("Educ."); *Doe # 1 v. Montgomery Cty. Bd. of Educ.*, PJM-21-0356, 2021 WL 6072813, at *7 (D. Md. Dec. 23, 2021); *Brown v. Prince George's Cty. Bd. of Educ.*, GJH-18-2723, 2019 WL 3944983, at *3 (D. Md. Aug. 20, 2019). County school boards in Maryland are established as part of the State's program of public education, and may not buy, sell,

or hold property without State approval. *Farrell v. Bd. of Educ.*, GLR-16-2262, 2017 WL 1078014, at *3 (D. Md. Mar. 21, 2017); *see* Educ. §§ 3-108, 4-109, 4-115. Additionally, the State of Maryland controls the form of contract for employees of county boards of education, defines and enforces teacher certification requirements, and may reduce programming, order a reorganization, or reconstitute schools that are not meeting State standards. *Lewis v. Bd. of Educ. of Talbot Cty.*, 262 F. Supp. 2d 608, 613 (D. Md. 2003) (citing Code of Maryland Regulations ("COMAR"), 13A.01.04.08, 07.02.01)).

Under Maryland law, "in certain contexts," county boards of education are considered "an arm of the State." *Neal v. Baltimore City Bd. of School Commissioners*, 467 Md. 399, 405, 225 A.3d 66, 69 (2020). Numerous cases, both federal and State, have recognized that county boards of educations in Maryland are State agencies. *See, e.g., State v. Board of Educ.*, 346 Md. 633, 635 n.1, 697 A.2d 1334, 1335 n.1 (1997) ("The various county boards of education are State agencies."); *Board v. Secretary of Personnel*, 317 Md. 34, 44 n.5, 562 A.2d 700, 705 n.5 (1989) ("It is settled that county boards of education are State agencies."); *see also Board of Educ. of Baltimore Co. v. Zimmer-Rubert*, 409 Md. 200, 205-06, 973 A.2d 233, 236 (2009) (recognizing that the Baltimore County Board of Education is a State agency); *J.G. by & through Gusman v. Prince George's Cty. Bd. of Edu*, PWG-16-1008, 2017 WL 930130, at *4 (D. Md. Mar. 8, 2017) (concluding that Maryland school boards are state agencies and not "persons" under § 1983); *Wood v. Bd. of Educ. of Charles Cty.*, GJH-16-00239, 2016 WL 8669913, at *5 (D. Md. Sept. 30, 2016) (same); *Schiffbauer v. Schmidt*, 95 F. Supp. 3d 846, 851–52 (D. Md. 2015) (same); *Shank v. Balt. City Bd. of Sch. Comm'rs*, WMN-11-1067, 2014 WL 198343, at *2 (D. Md. Jan. 14, 2014) ("The Eleventh Amendment explicitly bars [the plaintiff's] suit against the Board of Education as a state agency with respect to his federal law claims ...") (alteration in original) (quoting *Chi v. Bd. of*

*Educ. of Harford Cnty.,* HAR-93-3569, 1995 WL 131288, at *3 (D. Md. Feb. 6, 1995)) (internal

quotation marks omitted)); *Mayo v. Bd. of Educ. of Prince George's Cty.*, 797 F. Supp. 2d 685,

689 (D. Md. 2011) (same), *aff'd*, 713 F.3d 735 (4th Cir. 2013); *James v. Frederick County Pub.*

*Schs.*, 441 F. Supp. 2d 755, 760 (D. Md. 2006) (same).

However, in *Donlon v. Montgomery County Public Schools,* 460 Md. 62, 188 A.3d 949

(2018), the Maryland Court of Appeals[14] engaged in a comprehensive analysis as to the status of

county boards of education in Maryland.  The court observed that, with respect to whether the

boards are local or State agencies, they have "hybrid" qualities.  *Id.* at 82, 188 N.3d at 961.  In

other words, they have some features consistent with a local entity and some consistent with a

State instrumentality.  *Id.* at 84, 188 A.3d at 961-62.  For example, county boards of education are

not identified by statute as "Principal Departments" of the executive branch of State government.

*See* Md. Cod (2021 Repl. Vol.), § 8-201 of the State Government Article.  Yet, they "exist by

virtue of the acts of the [Maryland] General Assembly and have been categorized as State

agencies . . . ."  *Donlon*, 460 Md. at 82, 188 A.3d at 961 (citing *Beka Industries, Inc. v. Worcester*

*Co. Bd. of Educ.*, 419 Md. 194, 212, 18 A.3d 890, 901 (2011)).

After reviewing the hybrid qualities of Maryland's local boards of education, including the

extensive supervision by the State Board of Education, *id.* at 84, 188 A.3d 962, the Maryland Court

---

[14]  In the general election of November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland.  And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland.  These changes went into effect on December 14, 2022.  *See* Press Release, Maryland Courts, Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland (Dec. 14, 2022), https://www.courts.state.md.us/media/news/2022/pr20221214#:~:text=Effective%20immediately%2C%20the%20Court%20of,the%20Appellate%20Court%20of%20Maryland.  However, to avoid confusion, I will refer to the names of the courts as they existed when the cited cases were decided.

of Appeals stated that they "defy 'simple and definitive categorization as either a State or local agency or instrumentality for any and all purposes.'" *Id.* at 83, 188 A.3d at 961 (citation omitted) (cleaned up).  Rather, the determination is complex, not "fixed" or "rigid." *Id.* at 95, 188 A.3d at 968.

In a phrase, it depends.  But, with regard to a teacher's suit relying on a State whistleblower law, at issue in *Donlon*, the Maryland Court of Appeals determined that the county board of education was not a State agency.  Therefore, it concluded in *Donlon* that a teacher in Montgomery County was not protected by the Maryland State Whistleblower Protection Law, Md. Code (1993, 2015 Repl. Vol., 2016 Supp.), §§ 5–301–314 of the State Personnel and Pensions Article.  *See Donlon*, 460 Md. at 96, 188 A.3d at 969.

Since *Donlon*, however, courts have continued to conclude, almost summarily, that county school boards in Maryland are State agencies and therefore not "'persons" subject to suit under § 1983. *See*, *e.g., Doe #1,* 2021 WL 6072813, at *8 (concluding that "county school boards in Maryland are controlled by the state and therefore are not 'persons' within the meaning of the § 1983."); *Gandy v. Howard County Bd. of Educ.,* GLR-20-3436, 2021 WL 3911892 at *12 (D. Md. Sep. 1, 2021) (stating that  "it is well established in Maryland that county school boards as not considered 'persons' under § 1983 and therefore cannot be subject to liability under the statute."); *Agbara v. v. Prince George's Cnty. Pub. Sch*, TJS-20-0306, 2020 WL 7425298, at *6 (D. Md. Dec. 18, 2020) ("Because the Board does not qualify as a "person" under § 1983, [plaintiff's] § 1983 claims against the Board are not viable and will be dismissed with prejudice pursuant to Rule 12(b)(6)").

I recognize the hybrid features of a county School board, as outlined in *Donlon*.  But, in the context of this case, and assuming the truth of the allegations, I am amply satisfied that the

BOE is properly characterized as a State agency.  The suit is rooted in the Board's performance of its core State functions, duties, and responsibilities: providing an education to students.  In this regard, it qualifies here as a State agency.

It follows that the Board is not a person within the meaning of § 1983. As a result, as to the Board, Count II and Count III must be dismissed.

### 3.  Michael and Peake

At the relevant time, Dr. Michael was the "Superintendent" of the "Washington County School District" and Peake was the "Principal" of the School. ECF 1, ¶¶ 90, 91, 100, 101.  The Complaint does not make clear whether Michael and Peake were sued in their official or personal capacities or both. *Harvey v. Cline*, JTC-15-14091, 2016 WL 1562950, at *4 (S.D. W.Va. Apr. 18, 2016) ("If a complaint specifically alleges a capacity in which the defendant is being sued, that designation controls.").

"It is not a prerequisite for a plaintiff to state that he is suing a defendant in his or her individual capacity in order to state a cause of action under § 1983." *Harris v. Copeland, C.A.*, GRA-11-02209, WL 4504764, at *5 (D.S.C. Aug. 22, 2013).  But, defendants argue that it "is clear that Plaintiffs are asserting claims against Dr. Michael and Ms. Peake in their official capacities . . . ."  ECF 4 at 10 n.6; *id.* at 9.  To the extent that Michael and Peake have been sued in their official capacities, they argue that Counts II and III must be dismissed, as these defendants are State officials who were acting in their official capacities and therefore they are not "persons" under 42 U.S.C. § 1983. ECF 4 at 9, 11. However, if plaintiffs have sued Michael and Peake in their personal capacities, defendants assert that dismissal is warranted because the allegations do

not "overcome the high hurdles necessary to impose supervisory liability in a § 1983 claim," and both individuals are entitled to qualified immunity.  ECF 4 at 10 n.6.[15]

In response, plaintiffs indicate that they "intend to file a formal motion to amend [the Complaint] by consent or by leave of court under Rule 15(a)(2) and in accordance with the U.S. District Court of Maryland Local Rules" so as to "bring claims against Michael and Peake as individual persons in their individual capacity under §1983." ECF 11 at 14-15.  Presumably, this is because state officials sued in their personal capacities are amenable to suit as "persons" under § 1983. *See, e.g., Williams v. Wicomico Cty. Bd. of Educ.*, 836 F.Supp.2d 387, 392 (D. Md. 2011) (explaining that § 1983 provides a cause of action in suits against state officials acting in their personal capacity).  Therefore, I will consider Count II and Count III as to Michael and Peake only as official capacity claims.

The Supreme Court said in *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted):  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *See also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984)  ("And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."); *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam) ("The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.").

---

[15] Throughout their brief, defendants relegate important contentions to lengthy footnotes with small font.

To the extent Michael and Peake are sued in their official capacities, it is tantamount to a suit against the State.  Therefore, they are not "persons" under 42 U.S.C. § 1983. *See, e.g.*, *Purnell v. Converse*, JMC-21-3202, 2022 WL 17552552, at *10 (D. Md. Dec. 9, 2022); *Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 650 (D. Md. 2004); *see also Doe* #1, 2021 WL 6072813, at *8 (holding that school officials acting in their official capacities are acting as the State and therefore not "persons" under 42 U.S.C. § 1983); *McIntosh v. Div. of Corr.,* PWG-16-1320, 2017 WL 3412081, at *4 (D. Md. Aug. 7, 2017) (same).

Accordingly, I shall dismiss Count II and Count III against defendants Michael and Peake, to the extent they are sued as State officials acting in their official capacities.

### 4. Leave to Amend

As noted, plaintiffs seek "leave to amend their Complaint to bring claims against Michael and Peake as individual persons in their individual capacity under §1983." ECF 11 at 14-15.  As discussed, plaintiffs indicated that they would "file a formal motion to amend by consent or by leave of court under Rule 15(a)(2) . . . ." *Id.* However, plaintiffs did not do so. Nonetheless, in the interest of efficiency, and to avoid further delay, I will consider plaintiffs' request as tantamount to a motion for leave to amend the Complaint.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend [her] pleading once as a matter of course within: A) 21 days after serving it, or B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, "Federal Rule of Civil Procedure 15(a)(2) provides that courts 'should freely give leave' to parties to amend pleadings 'when justice

so requires.'" *Sohrabi v. Mirghahari*, GJH-20-2001, 2023 WL 1416020, at *2 (D. Md. Jan. 31, 2023) (citing Fed. R. Civ. P. 15(a)(2)). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

The decision whether to grant leave to amend a complaint lies within the sound discretion of the district court. *Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W.Va.*, 985 F.2d 164, 167–68 (4th Cir. 1993) (internal citation omitted). Nevertheless, "a district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc*. 637 F.3d 462, 471 (4th Cir. 2011) (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc*., 525 F.3d 370, 376 (4th Cir. 2008)).

The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see Equal Rights Ctr. v. Niles Bolton Assoc.*, 602 F.3d 597, 603 (4th Cir. 2010) (stating that leave to amend may be denied where the proposed amendment "would be prejudicial to the opposing party, or the moving party has acted in bad faith, or the amendment would be futile"); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012); *Medigen of Ky., Inc.*, 985 F.2d at 168. There is no hint of bad faith on the part of plaintiff.  And, at this early stage of the case, an amendment would not result in prejudice to defendants.  *See Brathwaite v. Helm,* GLS-22-1457, 2023 WL 185176 at *1 (D. Md. Jan. 12, 2023); *Class Produce Grp., LLC v. Harleysville Worcester*

*Ins. Co.,* ELH 16-3431, 2017 WL 2377105, at *9 (D. Md. May 31, 2017) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)).  The only issue is one of futility.

Of relevance here, an amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.  An amendment is also futile if it would fail to withstand a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

At this stage, I cannot determine, as a matter of law, that there is no factual scenario to support a § 1983 claim against the defendants in their individual capacities.[16]  Leave to amend will be granted.

### C.  Negligence

Count IV asserts a claim of "Negligence" under Maryland law against all defendants.  In Count V, defendants assert a claim under Maryland law of negligent supervision, monitoring, and training against the BOE, Michael, and Peake.

Plaintiffs allege that defendants owed a duty of care to A.T., a six-year-old student, because she was "entrusted" to defendants' care in order to receive an education. ECF 1, ¶114.  As to Housel, they assert that "children were able to repeatedly hide behind a bookshelf in [Housel's] classroom, during class time and film themselves sexually abusing Plaintiff." *Id.* ¶ 34.  In addition, plaintiffs claim that defendants should have known that A.T. was at risk, because Housel "expressed that she was unable to sufficiently supervise and monitor A.T. and Student A in the fall of 2019." ECF 1, ¶ 116.  Moreover, despite Robinson's request to move A.T. to another class,

---

[16] Because I conclude that the individual defendants were sued only in their official capacities, I need not reach the defense of qualified immunity, asserted only in a footnote. *See* ECF 4 at 10 n.6.  The same footnote also contains other grounds for dismissal, which I decline to consider at this juncture.

defendants failed to do so or to investigate Robinson's concern. *Id.* ¶ 118. And, they allege that defendants breached a duty of care, *inter alia*, by failing to implement reasonable classroom management protocols and iPad monitoring measures, which led to the sexual abuse of A.T. and prevented the defendants from timely discovery of the abuse. *Id.* ¶¶ 121, 122, 123, 139-143.

Defendants urge the Court to dismiss both negligence claims. They move to dismiss Count IV against Michael, Peake, and Housel on the ground that they are immune from personal liability under § 5-518 of the Courts and Judicial Proceedings Article ("C.J.") of the Maryland Code (2020 Repl. Vol.) and the Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C. §§ 7941 et seq (hereafter, "Coverdell Act"). ECF 4 at 13 n.7.[17] They also argue as to Count IV that it constitutes an educational malpractice claim, which is not recognized in Maryland. ECF 4 at 13.

As to Count V, defendants argue that it is superfluous and "quite unnecessary." *Id.* at 19. According to the defendants, the Board is vicariously liable, as it has already admitted the individual defendants here were acting within the scope of their employment. *Id.* at 18-19.

### 1. Negligence (Count IV)

In Count IV, ECF 1, ¶ 139, plaintiffs advance multiple grounds for negligence. They assert that defendants are liable for the following, *id.*:

> a) failing to implement, enforce and make known policies pertaining to appropriate usage of school-owned technological devices, in this case classroom iPads/tablets;

---

[17] The defendants do not assert State sovereign immunity or Eleventh Amendment immunity. The Court is mindful that the defense of sovereign immunity implicates subject matter jurisdiction. *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted), *cert. denied*, ___ U.S. ___, 139 S. Ct. 417 (2018). And, "[l]ack of subject matter jurisdiction may be raised at any time by the parties or by the court,'" because "subject matter jurisdiction cannot be forfeited or waived." *MDC Innovations, LLC v. Hall*, 726 Fed.Appx. 168, 172 (4th Cir. 2018) (internal quotation and citations omitted). But, sovereign immunity does not appear to apply here. *See Zimmer-Rubert*, 409 Md. at 216, 973 A.2d at 242 ("Having concluded that § 5–518(c) embraces all claims, thereby effecting a waiver of sovereign immunity in this case, we also hold that the statute effects a waiver of the Board's Eleventh Amendment immunity.").

b) failing to ensure that students, including but not limited to A.T. were sufficiently and adequately supervised;

c) failing to educate teachers and students on the proper and appropriate usage of classroom iPads/tablets;

d) failing to sufficiently supervise and monitor students' use of classroom iPads/tablets;

e) failing to sufficiently monitor electronic content created, downloaded and maintained on school-owned devices, including iPads/tablets;

f) failing to sufficiently address, investigate and resolve any supervision, or disciplinary issues that were occurring in Housel's classroom and were affecting Jane Doe's safety and personal wellbeing;

g) Failing to take reasonable steps to protect A.T. and ensure she did not fall victim to physical or sexual assault during approximately five different occurrences in the fall of 2019;

h) Failing to conduct an appropriate investigation into the causes and circumstances of the physical or sexual assaults inflicted on Jane Doe;

i) Failing to provide assistance to teachers, including Housel, to ensure that every student was carefully monitored including Jane Doe;

j) Failing to ensure that A.T. was protected from physical or sexual assault by other students at [the School];

k) Failing to adequately train, supervise, or instruct their agents, servants or employees to manage a class of 20 or more students;

l) Failing to provide adequately trained and supervised employees and staff to care for A.T. and other students;

m) Failing to fulfill their duties to A.T.as an invitee on the premises of Ruth Ann Elementary, by failing to use reasonable care to ensure that there was a clear line of sight to supervise A.T .and other students;

n) Failing to protect A.T. from unreasonably dangerous conditions on the premises;

o) Failing to establish, follow, or enforce appropriate policies, procedures, or protocols to properly address the needs of students including Jane Doe; and

31

p) Other negligent acts and omissions as may be revealed during the course of discovery.

In general, to assert a claim of negligence in Maryland, the plaintiff must allege the following elements: "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of that duty." *Steamfitters Loc. Union No. 602 v. Erie Ins. Exch.*, 469 Md. 704, 727, 233 A.3d 59, 72 (2020); *see also Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 611, 155 A.3d 445, 451 (2017) (citing *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013)); *see Schultz v. Bank of Am.*, N.A., 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010) ("In a negligence case, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.' " (alterations in *Schultz*) (quoting *Jacques v. First Nat. Bank of Md.*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986)).

Relevant here, "[a]lthough there is generally no duty to protect others from third parties' conduct, such a duty may arise in the presence of a special relationship." *Doe v. Bd. of Educ. of Prince George's Cty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012) (citing *Rhaney v. Univ. Of Md. E. Shore*, 388 Md. 585, 597-598, 880 A.2d 357, 364 (2005)). As the *Doe* Court observed, 888 F. Supp. 2d at 669, under "certain circumstances, a special relationship exists between a school district and its students," largely because, "as a general matter, school districts assume significant responsibility for the 'welfare and guidance' of children within their purview." (Citations omitted).

To that end, Maryland courts have recognized "'the doctrine that the relation of a school vis à vis a pupil is analogous to one who stands in loco parentis, with the result that a school is

under a special duty to exercise reasonable care to protect a pupil from harm.'" *Gambrill v. Board of Education of Dorchester County*, 481 Md. 274, 315, 281 A.3d 876, 900 (2022) (quoting *Eisel v. Bd. of Educ. of Montgomery Cty.*, 324 Md. 376, 597 A.2d 447, 451-52 (1991)); *see also Loveless v. Estevez,* No. 01985, Sept. Term 2017, 2019 WL 4187465, at *6 (Md. Ct. Spec. App. Sept. 3, 2019) ("[S]chool authorities have a common law duty, 'as the temporary custodians of children, to exercise reasonable care for their protection.'") (quoting *Collins v. Bd. of Educ. of Kent Cnty*., 48 Md. App. 213, 218, 426 A.2d 10, 13 (1981)).

As noted, plaintiffs have pleaded that the defendants owed a duty of care to A.T., a six-year-old student, because she was entrusted to defendants' care for educational purposes. ECF 1, ¶114. Plaintiffs have also alleged that defendants breached their duty, *inter alia*, by failing to implement iPad monitoring measures, which led to the sexual abuse of A.T. in her classroom, while at School.  *Id.* ¶¶ 139-143.  For example, plaintiffs claim that defendants "did not conduct routine reviews of the content of the school issued iPads."  ECF 1, ¶ 52.  In addition, they claim that defendants personally failed to develop a policy to ensure that the devices were adequately monitored. *Id.*

Defendants concede that plaintiffs "may have arguably alleged a state law claim for negligent supervision with sufficient specificity to avoid a motion to dismiss." ECF 4 at 13.  But, they assert, *inter alia*, that plaintiffs improperly attempt to hold defendants liable for educational malpractice, ECF 4 at 13; improperly assert supervisory liability, *id.*; improperly invoke "'captain of the ship liability'", *id.* at 14 n. 8; and assert that Michael, Peake, and Housel are not liable, pursuant to C.J. § 5-518 and the Coverdell Act, *id.* at 13 n.7.

Defendants seek dismissal of the claim to the extent that the negligence claim is one of educational malpractice.  ECF 4 at 13-17. Defendants are correct that Maryland does not recognize

a claim for educational malpractice. *See Carroll v. Walden Univ.*, LLC, JRR-22-00051, 2022 WL 17252556, at *22 (D. Md. Nov. 28, 2022); *Hunter v. Bd. Of Educ. Of Montgomery Cnty.,* 292 Md. 481, 490, 439 A.2d 582, 587 (1982). However, the plaintiffs' claim is not one of educational malpractice.

"The educational malpractice doctrine applies when a court is 'asked to evaluate the course of instruction'" or is "'called upon to review the soundness of the method of teaching that has been adopted by an educational institution.'" *Gambrill*, 481 Md. at 309, 281 A.3d at 897 (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992)) (brackets omitted); *see Paladino v. Adelphi Univ.*, 89 A.D. 2d 85, 90 (N.Y. 1982). In other words, it precludes a court from adjudicating claims concerning the quality of education provided by an educational institution. *See Gurbani v. Johns Hopkins Health Systems Corp.*, 237 Md. App. 261, 293, 185 A.3d 760, 770 (2018).

Of relevance here, the doctrine is limited to cases seeking review of "pedagogical decisions." *Gambrill,* 481 Md. at 312, 281 A.3d at 898. It does not extend to claims related to student safety. *See*, *e.g., Willey*, 557 F. Supp. 3d at 645 (concluding that plaintiff's claim that school failed to protect students from harm "is not a matter of educational policymaking" and therefore is not barred by the educational malpractice doctrine); *Gandy,* 2021 WL 3911892, at *7 (holding educational malpractice doctrine did not bar claim that "teachers were unfamiliar with the unique behavioral needs of special education students, which increased the chance that Student Doe would suffer physical harm").

Plaintiffs' claims concern defendants' purported failure to protect A.T. from harm. The educational malpractice doctrine is not implicated and thus does not provide a basis for dismissal.

Defendants also contend that the negligence claim is defective because Michael and Peake "cannot be vicariously liable for the acts/omissions of others at [the School]" and, in their

respective capacities as Superintendent and Principal, they are protected under the "captain-of-the-ship" doctrine. ECF 4 at 14 n. 8 (citing *Franklin v. Gupta*, 81 Md. App. 345, 366-367, 567 A.2d 524, 534-535 (1990)).  But, those are not the grounds on which plaintiffs seek to impose liability. Rather, they seek to assert claims of direct negligence.

As discussed, defendants also argue that the negligence claims against Michael, Peake, and Housel "are extraneous as they are all shielded from personal liability" under C.J. § 5-518. *See* ECF 4 at 13 n.7. I disagree.

Title 5 of the Courts and Judicial Proceedings Article of the Maryland Code is titled "Limitations, Prohibited Actions, and Immunities."  C.J. § 5-518 is titled: "Immunity—County boards of education."  C.J. § 5-518 provides, in part:

> (b) *Claims for more than $400,000.* — A county board of education, described under Title 4, Subtitle 1 of the Education Article, may raise the defense of sovereign immunity to any amount claimed above the limit of its insurance policy or, if self–insured or a member of a pool described under § 4–105(c)(1)(ii) of the Education Article, above $400,000.
>
> (c) *Claims for $400,000 or less.* — A county board of education may not raise the defense of sovereign immunity to any claim of $400,000 or less.
>
> (d) *Parties in tort claims; separate litigation of issues.* — (1)   The county board shall be joined as a party to an action against a county board employee, county board member, or volunteer that alleges damages resulting from a tortious act or omission committed by the employee in the scope of employment, by the county board member within the scope of the member's authority, or by the volunteer within the scope of the volunteer's services or duties.
>
> (2)   The issue of whether the county board employee acted within the scope of employment may be litigated separately.
>
> (3)   The issue of whether the county board member acted within the scope of the member's authority may be litigated separately.
>
> (4)    The issue of whether the volunteer acted within the scope of the volunteer's services or duties may be litigated separately.
>
> (e) *Employees.* — A county board employee acting within the scope of employment, without malice and gross negligence, is not personally liable for damages resulting from a tortious act or omission for which a limitation of liability is provided for the county board under subsection (b) of this section, including damages that exceed the limitation on the county board's liability.

The parties agree that the individual defendants were employed by the BOE. Therefore, C.J. § 5-518 applies to Michael, Housel, and Peake.

Maryland courts have examined in great detail the contours of liability under C.J. § 5-518, and have determined that, under the statute, covered individual defendants are not personally liable for damages. However, they are not immune from suit. *See Gambrill*, 481 Md. at 308-09, 281 A.3d at 896; *see also Board of Education of Prince George's County v. Marks-Sloan*, 428 Md. 1, 32, 50 A.3d 1137, 1155 (2012) ("Tort suits may be brought against county board employees and judgments may be entered against them."). Rather, the Board "shall be joined as a party to an action against a county board employee" and indemnify such individuals acting within the scope of employment for damages up to $400,000. C.J. § 5-518(d)(1); s*ee, e.g., Neal,* 467 Md. at 424, 225 A.3d at 81 ("The clear intent of the General Assembly in enacting § 5-518 was to protect employees by requiring joinder of county boards of education by way of indemnification against the board."); *Board of Education of Prince George's* County, 428 Md. at 12-13, 50 A.3d at 1144-1145; *see also Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 408-418 (D. Md. 2022). Accordingly, C.J. § 5-518 does not authorize the dismissal of the negligence claims against Michael, Peake, and Housel.

Of note, gross negligence does not fall within the scope of C.J. § 5-518. *See Gambrill*, 481, Md. at 309, 281 A.3d at 896 n. 16 ("Where the claims survive summary judgment and proceed to a jury verdict, the employee would not be personally liable for a judgment on the negligence count but would be liable for a judgment based upon gross negligence."). "Gross negligence has been equated with 'wilful and wanton misconduct,' a 'wanton or reckless disregard for human life or for the rights of others.'" *Foor v. Juvenile Servs. Admin*., 78 Md. App. 151, 175, 552 A.2d 947, 956 (1989) (citation omitted), *cert. denied*, 316 Md. 364, 558 A.2d 1206 (1989).

Plaintiffs make a passing reference to defendants' breach of duty by gross negligence.  ECF 1, ¶¶ 143, 156.  But, the assertion is little more than a "[c]onclusory allegation[] of gross negligence [that is] insufficient for [the] plaintiff[s] to prevail at the Rule 12(b)(6) stage." *Palmer v. Kirklan*, GLR-16-2636, 2017 WL 11615522, at \*3 (D. Md. June 23, 2017) (citing *Barbre v. Pope*, 402 Md. 157, 187, 935 A.2d 699, 717 (2007)).

Defendants also argue that Michael, Peake, and Housel "have certain immunity protections under" the Coverdell Act, 20 U.S.C. § 7941 *et seq*.  *See* ECF 4 at 13 n.7. "As a preliminary matter, a claim of immunity under the Coverdell Act is an affirmative defense." *Doe v. Washington County Bd. of Educ.*, JFM-15-00074, 2015 WL 4716065, at \*5 (D. Md. Aug. 6, 2015). And, Rule 12(b)(6) motions "generally cannot reach the merits of an affirmative defense" because the only relevant "facts" are allegations in the plaintiff's complaint. *Goodman*, 494 F.3d at 464.  But, some courts have addressed a Coverdell Act defense in connection with a motion to dismiss. *See, e.g., Dennis v. Bd. of Educ. of Talbot Cnty.*, 21 F.Supp.3d 497, 502 (D. Md. 2014).

The Coverdell Act immunizes any "teacher," including a principal or administrator, "for harm caused [to a student] by an act or omission of the teacher on behalf of the school if" the "teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity" and "the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school." 20 U.S.C. § 7946(a)(1)-(2).

Notably, "the Coverdell Act is designed to target tort or statutory causes of action that may, for whatever reason, find their way into federal court."  *Dennis*, 21 F.Supp.3d at 502.  *See, e.g., J.L. v. Royal Valley U.S.D. 337*, TC-19-2651, 2021 WL 4197720 at \*10 (D. Kan. Sept. 15, 2021)

(finding that Coverdell immunity applied to superintendent with respect to a negligence claim concerning student-on-student sexual assault); *Kowalski v. Berkeley Cnty. Pub. Schs*., JPB-7-147, 2009 WL 10675108, at *15 (N.D.W. Va. Dec. 22, 2009) (dismissing under the Coverdell Act an emotional distress claim against school defendants); *C.B. v. Sonora Sch. Dist.*, 691 F.Supp.2d 1123, 1148–50 (E.D. Cal.2009) (same). Further, "there is nothing in the text of the [Coverdell] Act to indicate that teachers are immune from suit. Rather, the Act is couched in terms of a teacher's liability and liability protection." *Gambrill*, 481 Md. at 307, 281 A.3d at 895.

In order to invoke Coverdell Act immunity, the teacher must be appropriately licensed or credentialed.  Moreover, the harm must not have been caused by gross negligence or other forms of wanton misconduct or by a vehicle. 20 U.S.C. § 7946(a)(3)-(5).  And, the Coverdell Act does not apply when an individual defendant is in direct violation of the law. *See, e.g., Wilcox v. Andalusia City Schools Bd. of Educ.,* RAH-19-650, 2023 WL 2412775, at *19 (M.D. Ala. Mar. 8, 2023) (declining to provide Coverdell Act immunity to a teacher who allegedly assaulted a student); *J.W. v. Monett R-1 Schl. Dist.,* DH-17-05261, 2018 WL 11376254, at *8 (W.D. Mo. May 8, 2018) (declining to apply Coverdell Act immunity to the principal and superintendent where the thrust of plaintiff's claims was that the individuals did not act in accordance with the law).

The Board agrees that Michael, Peake, and Housel were acting within the scope of their employment. ECF 5, ¶¶ 15-19. Further, the alleged acts and omissions primarily concerned A.T.'s safety and the failure of defendants to protect A.T. from sexual abuse committed by other students.

In a bullying case, Judge J. Frederick Motz said: "Conduct designed to prevent bullying is certainly tied to the overall goal of maintaining order and control. Indeed, the fact that J.D. was [assaulted], allegedly in the middle of the lunchroom, suggests that reasonable control and order

was lacking." *Doe,* 2015 WL 4716065, at *5.  He concluded that the acts and omissions of the

assistant principal fell within the Coverdell Act.

In much the same way, the alleged acts and omissions of the defendants regarding A.T. are

the kind intended to be protected by the Coverdell Act. *See Nkemakolam v. St. John's Military

Sch.*, 890 F.Supp.2d 1260, 1263 (D.Kan.2012) (granting the president of the school Coverdell Act

immunity based on plaintiffs' allegation that he "failed to supervise and control the conduct of

students at the school").

However, there are statutory exceptions to teacher liability protection.  Specifically, the

Coverdell Act states, 20 U.S.C. § 7946(b)(2):

> If the laws of a State limit teacher liability subject to one or more of the following
> conditions, such conditions shall not be construed as inconsistent with this section:
> . . . . (2) A State law that makes the school or governmental entity liable for
> the acts or omissions of its teachers to the same extent as an employer is
> liable for the acts or omissions of its employees. . . .

The Maryland Court of Appeals has concluded that C.J. § 5-518, as discussed earlier, falls

within the Coverdell Act's exemption, and is not preempted by the Coverdell Act. It said,

*Gambrill*, 481 Md. at 308-09, 281 A.3d at 896:

> To summarize, reading provisions of the federal and state statutes together,
> we hold that Maryland has enacted a statute—CJ § 5-518—that "limit[s] teacher
> liability" by "mak[ing] the school or governmental entity liable for the acts or
> omissions of its teachers to the same extent as an employer is liable for the acts or
> omissions of its employees." 20 U.S.C. § 7946(b)(2). Where a state enacts such a
> law, the Coverdell Act expressly provides that the law "shall not be construed as
> [being] inconsistent with this section." 20 U.S.C. § 7946(b). The Maryland statute
> specifically states that a school board employee "is not personally liable for
> damages resulting from a tortious act or omission[,]" for which the county board is
> liable. CJ § 5-518(e). The statute further requires that the school board be joined as
> a party and indemnify the employee for any money judgment arising from negligent
> acts or omissions within the scope of employment. The employee's lack of personal
> liability for money damages, and the school board's concomitant liability for the
> acts and omissions of its employees, is evident not only from the plain language of
> the statute, but also from the legislative history which this Court examined in

*Marks-Sloan and Neal.* We determine that CJ § 5-518 fits within the exception set forth in 20 U.S.C. § 7946(b)(2). Accordingly, we hold the Coverdell Act is not in conflict with, nor does it preempt CJ § 5-518.

Accordingly, neither the Coverdell Act nor CJ § 5-518 requires the dismissal of Count IV. And, for the foregoing reasons, I shall deny the Motion as to Count IV.

### 2.  Negligent Employment (Count V)

Plaintiffs assert a claim against the Board, Michael, and Peake for negligent supervision, monitoring, and training of teachers and staff, including Housel.  ECF 1, ¶¶ 146, 147, 148, 149, 150, 151.

Defendants admit the existence of an employment relationship between the Board and Housel. ECF 5, ¶19. They urge dismissal of Count V, asserting that a claim for negligent employment cannot proceed where the employer has admitted vicarious liability.  Further, they argue that Count V is superfluous and redundant because plaintiffs have alleged vicarious liability as to the Board for the negligence of its employees. ECF 4 at 18-19.

Maryland has recognized that "an employer has an 'obligation to the public to use due care in selecting and retaining only competent and careful employees.'" *Jarvis v. Securitas Sec. Servs. USA, Inc.*, AW-11-654, 2012 WL 527597, at *6 (D. Md. Feb. 16, 2012) (quoting *Henley v. Prince George's Cnty.*, 60 Md. App. 24, 36, 479 A.2d 1375, 1382 (1984)), *aff'd sub nom. Jarvis v. Contractor Securitas Sec.*, 474 F. App'x 271 (4th Cir. 2012). To state a claim for negligent employment, plaintiffs must allege: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in [supervision, monitoring, training, or retention] . . . as the approximate

cause of plaintiff's injuries." *Jarvis*, 2012 WL 527597, at *5 (citing *Latty v. St. Joseph's Soc. of Sacred Heart*, *Inc.*, 198 Md. App. 254, 272, 17 A.3d 155, 165 (2011)).

The essence of the duty was expressed by the Maryland Court of Appeals in *Evans v. Morsell*, 284 Md. 160, 166, 395 A.2d 480, 483 (1978) (citation omitted):

> One dealing with the public is bound to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee. When an employer neglects this duty and as a result injury is occasioned to a third person, the employer may be liable even though the injury was brought about by the willful act of the employee beyond the scope of his employment.

Further, the court said: "Where an employee is expected to come into contact with the public . . . the employer must make some reasonable inquiry before hiring or retaining the employee to ascertain his fitness, or the employer must otherwise have some basis for believing that he can rely on the employee."  *Id.* at 166–67, 395 A.2d at 484.

Of relevance here, "a claim that an employer is vicariously liable for an employee's misconduct is different from a claim of negligent hiring or supervision." *Karn v. PTS of Am., LLC*, 590 F. Supp. 780, 805 (D. Md. 2022); s*ee also Fidelity First Home Mortgage Company v. Williams*, 208 Md.App. 180, 56 A.3d 501 (2012) (affirming verdict where employer was found to be directly liable for negligently supervising and retaining an employee, and also vicariously liable for that employee's misconduct).  Indeed, "[u]nlike respondeat superior, which holds the employer vicariously liable for certain employee torts, this cause of action is based on the employer's breach of his duty of care, which is nondelegable." *Henley v. Prince George's Cty.*, 60 Md. App. 24, 36, 479 A.2d 1375, 1382 (1984), *aff'd in part, rev'd in part on other grounds*, 305 Md. 320, 503 A.2d 1333 (1986). Thus, this claim is not superfluous. *See Mother Doe #1, et al., v. Board of Education of Somerset County, et al.*, RDB-22-1491, 2023 WL 375189, at *4-5 (D. Md. Jan. 24, 2023)

(finding that claim for direct liability for failure to supervise and vicarious liability could proceed against school board).[18]

Plaintiffs allege that defendants were on notice of the need to train teachers and staff, including Housel, on sexual abuse and harassment, device safety, and classroom supervision. *Id.* ¶¶ 24-28, 31-32, 149. Yet, according to plaintiffs, the training did not occur. *See Jones v. State*, 425 Md. 1, 33, 38 A.3d 333 (2012) (explaining that a plaintiff can establish causation by showing that negligent training was both a "substantial factor" in an injury and that injury was a "foreseeable result"). As a result, plaintiffs contend that "children were able to repeatedly hide behind a bookshelf in [Housel's] classroom, during class time and film themselves sexually abusing" A.T. ECF 1, ¶ 34.

The case law provided by defendants is not persuasive. The cases they cite concern automotive torts and, as such, look to the doctrine of negligent entrustment. *See, e.g., Sneed v. SW Trucking LLC,* ADC-19-626, 2020 WL 1812866, at *4 (D. Md. Apr. 9, 2020) (stating that "[t]he Court's analysis regarding Plaintiff's negligent entrustment claim also applies to Plaintiff's negligent hiring, training, retention, and supervision claim."); *Greene v. Grams*, 384 F.Supp.3d 100, 104 (D. D.C. 2019) (looking to Maryland common law for guidance on vehicular negligence). The Motion makes no further argument as to the viability of Count V.

In my view, dismissal is inappropriate at this juncture.

---

[18] The defendants also argue that the Board is the only appropriate defendant for Count V, as "the [Board] is the only entity that employs the staff and teachers." ECF 4 at 17-18. However, at this juncture, the Court cannot consider hiring policies or other evidence substantiating the assertion.

**IV.    Conclusion**

In light of the foregoing, the Motion shall be granted in part and denied in part. I shall

dismiss Counts II and III against the BOE.  And, because I have concluded that Michael and Peake

were sued in those counts only in their official capacity, I shall dismiss those counts as to them.

However, I shall also grant plaintiff's request for leave to file an Amended Complaint against

Michael and Peake, in their individual capacities, with respect to Counts II and III. I shall otherwise

deny the Motion.

An Order follows, consistent with this Memorandum Opinion.


Date: March 14, 2023                                 _____/s/_____

                                                          Ellen L. Hollander
                                                          United States District Judge